# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| WYOMING TECHNOLOGY LICENSING, LLC,<br><br>              Plaintiff,<br><br>     v.<br><br>APPLE INC.,<br><br>              Defendant. | Civil Action No. 1:24-cv-00347-RP<br><br>**JURY TRIAL DEMANDED**<br><br>**ORAL ARGUMENT REQUESTED** |

## DEFENDANT APPLE INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................1

III.  LEGAL STANDARD.........................................................................................3

IV.   ARGUMENT ......................................................................................................5

    A.    Claim 1 of the '776 Patent Is Representative.............................................5

    B.    *Alice* Step One: The '776 Patent Claims Are Directed to the Abstract Idea of Receiving, Analyzing, and Communicating Information. ......................................9

    C.    *Alice* Step Two: The '776 Patent Does Not Contain An Inventive Concept. ........13

    D.    The '766 Patent Preempts the Practical and Common-Sense Means for Responding to a Request for Information. ...............................................................16

V.    CONCLUSION.................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.,*
    728 F.3d 1336 (Fed. Cir. 2013)..................................................................................7, 9

*Affinity Labs of Texas, LLC v. Amazon.com Inc.,*
    838 F.3d 1266 (Fed. Cir. 2016)...........................................................................................4

*AI Visualize, Inc. v. Nuance Communications, Inc.,*
    97 F.4th 1371 (Fed. Cir. 2024) ...................................................................................10, 4

*Alice Corp. Pty. v. CLS Bank Int'l,*
    573 U.S. 208 (2014)...................................................................................................3, 4, 5

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
    788 F.3d 1371 (Fed. Cir. 2015)........................................................................................16

*Athena Diagnostics, Inc. v Mayo Collab. Servs., LLC,*
    915 F.3d 743 (Fed. Cir. 2019)............................................................................................4

*Bilski v. Kapos,*
    561 U.S. 593 (2010)............................................................................................................3

*CardioNet, LLC v. InfoBionic, Inc.,*
    955 F.3d 1358 (Fed. Cir. 2020)..........................................................................................4

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
    859 F.3d 1352 (Fed. Cir. 2017)..........................................................................................3

*Content Extraction and Transmission, LLC v. Wells Fargo Bank, Nat. Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014).....................................................................................8, 11

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 .................................................................................................................10

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,*
    758 F.3d 1344 (Fed. Cir. 2014)....................................................................................11, 5

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016)................................................................................ *passim*

*Intell. Ventures I LLC v. Erie Indem. Co.,*
    850 F.3d 1315 (Fed. Cir. 2017)..........................................................................................4

*IPA Techs., Inc. v. Amazon.com, Inc.*,
   307 F. Supp. 3d 356 (D. Del. 2018)................................................................14, 15

*In re Killian*,
   45 F.4th 1373 (Fed. Cir. 2022) ......................................................................9

*Network Apparel Grp., LP v. Airwave Networks Inc.*,
   154 F. Supp. 3d 467 (W.D. Tex. 2015).........................................................3, 5

*PerformancePartners, LLC v. FlashParking, Inc.*,
   2023 WL 6617395 (W.D. Tex. Oct. 11, 2023).............................................6, 7, 8

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
   No. 4:20-CV-448-SDJ, 2021 WL 1196271 (E.D. Tex. Mar. 30, 2021) ...................4

*In re Rosenberg*,
   813 F. App'x 594 (Fed. Cir. 2020) .................................................................11

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)......................................................................11

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017).....................................................................7

*Trinity Info Media, LLC v. Covalent, Inc.*,
   72 F.4th (Fed. Cir. 2023) ...............................................................................3

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014).......................................................................5

*Voip-Pal.Com, Inc. v. Apple Inc.*,
   411 F. Supp. 3d 926 (N.D. Cal. 2019) ............................................................7

**Federal Statutes**

35 U.S.C. § 101.......................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).................................................................................16

## I.     INTRODUCTION

Plaintiff Wyoming Technology Licensing, LLC's ("Wyoming") Complaint should be dismissed for failure to state a claim because the sole asserted patent is invalid under 35 U.S.C. § 101.  The asserted claims of U.S. Patent No. 8,521,766 ("'766 patent") are directed to the basic process of receiving, analyzing, and communicating information, and they lack any inventive concept sufficient to transform that abstract idea into something patent eligible.  The '766 patent claims methods and systems for "receiving an information request," "decoding the information request," "discovering information" from the decoded request, "preparing . . . instructions" for accessing the discovered information, and "communicating the prepared instructions."  Dkt 1-1 at claims.  Rather than claim any technological improvement of that basic process, such as some improvement on the functioning of a computer, the '766 patent merely implements it using conventional computer components and processes in routine ways.  The Federal Circuit has already considered and found patent-ineligible numerous claims directed to essentially the same subject matter.  The claims at issue here fare no better.

## II.     BACKGROUND

The '766 patent is entitled "Systems and Methods for Providing Information Discovery and Retrieval," was filed on November 12, 2008, and issued on August 27, 2013.  Dkt. 1-1 at Cover.  The very first sentence describes the purported invention in abstract terms: "This invention relates generally to software and computers, and more specifically, to systems and methods for providing information discovery and retrieval."  *Id.* at Abstract; *see also* 2:29-31 (Summary of Invention).

According to the patent, it was, at the time of filing, "challenging for a media consumer to quickly and intuitively search for, locate, retrieve, and display or play desired media."  *Id.* at 1:34-36.  The specification thus describes various embodiments of systems and methods for receiving

information requests, for example, "uttering . . . 'Play the song "Siempre Hay Esperanzia" by Sade,'" analyzing, and responding to such requests. *See, e.g.*, 4:64-5:60.   However, the independent claims are not limited to speech-based or media-related requests but rather expand to requests made in any medium for any type of information.

For example, claim 1 recites:

1. A method, comprising:

receiving an information request;

decoding the information request;

discovering information using the decoded information request;

preparing, using one or more processing devices instructions for accessing the information, the instructions including:

> one or more Automatic Speech Recognition (ASR) grammar codes;
>
> one or more short text string matching codes; and
>
> one or more information formatting codes operative to format a consumer device display; and

communicating the prepared instructions.

Dkt. 1-1 at 15:36-50.

In brief, claim 1 (along with the '766 patent's other claims) is directed to (1) receiving information; (2) analyzing information (by "decoding" the request and discovering information using the decoded request); and (3) responding (by "preparing . . . instructions for accessing the information" and "communicating" those instructions).   *See id.*; *see also id.* at Abstract; 2:29-55 (Summary).

According to the '766 patent, "[a]ny of the methods disclosed [t]herein are configurable to being implemented using a software application," and "[a]ny of the software applications disclosed

[t]herein are configurable to operating on one or more computing devices." *Id*. at 4:37-44.  In other words, nothing more than conventional and generic computing technology is needed to implement the alleged invention.  While the '766 patent describes using certain speech recognition technology in some embodiments, it makes clear the "particular type[s] of speech recognition" referenced, such as "Context Free Grammar Automated Speech Recognition (CFG ASR)" or "Statistical Language Model Automated Speech Recognition (SLM ASR)," are themselves not inventive but rather known concepts.  *Id.* at 4:16-27 (acknowledging use of "industry term[s]" to describe referenced speech recognition techniques).  Accordingly, the '766 patent does not claim—and in fact disclaims—any improvements to computing hardware or any inventive software algorithm.

## III.   LEGAL STANDARD

Patentability under 35 U.S.C. § 101 is a threshold legal issue.  *Bilski v. Kapos*, 561 U.S. 593, 602 (2010).  Thus, "determining patent eligibility under § 101 is appropriate at the pleadings stage." *Network Apparel Grp., LP v. Airwave Networks Inc.*, 154 F. Supp. 3d 467, 473 (W.D. Tex. 2015), *report and recommendation adopted*, No. 6:15-CV-00134, 2016 WL 4718428 (W.D. Tex. Mar. 30, 2016), *aff'd*, 680 F. App'x 1003 (Fed. Cir. 2017); *see also Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th, 1355, 1360 (Fed. Cir. 2023) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced" (quotations omitted)); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases affirming § 101 rejections at the motion to dismiss stage).

When analyzing claims under § 101, the Court must first determine whether the claims "are directed to a patent-ineligible concept," such as an abstract idea.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014) ("*Alice* Step One").  *Alice* Step One considers the "focus of

the claims, their character as a whole" to determine whether the claims are directed to unpatentable subject matter. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quotations omitted). Whether a claim is directed to an ineligible concept, i.e., "whether the claimed advance improves upon a technological process or merely an ineligible concept," is determined by reviewing "both the written description and the claims." *Athena Diagnostics, Inc. v. Mayo Collab. Servs.*, LLC, 915 F.3d 743, 750 (Fed. Cir. 2019) (collecting cases); *see also CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372, 1374 (Fed. Cir. 2020) (explaining that *Alice* Step One is a "legal question that can be answered based on the intrinsic evidence"—*i.e.*, "the plain claim language [and] statements in the written description"). Where the character of the claim pertains to a longstanding practice that predates computers, the claim is directed to an abstract idea and fails *Alice* Step One. *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017).

"In the context of software applications, the dichotomy between patentable concrete ideas and unpatentable abstract ideas typically turns on whether the patent is directed to an improvement in the functioning of a computer, which is patentable, or to a method that simply adds conventional computer components to well-known business practices or that recites generalized steps to be performed on a computer using conventional computer activity, which is unpatentable." *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 4:20-CV-448-SDJ, 2021 WL 1196271, at *4 (E.D. Tex. Mar. 30, 2021), *aff'd*, No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) (quotations omitted). Moreover, claims that are "purely functional [in] nature" are "directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also Elec. Power*, 830 F.3d at 1356 ("[T]he essentially result-focused, functional character of claim language has been a frequent

feature of claims held ineligible under § 101.").

Where the claims are directed to a patent-ineligible abstract idea, the Court next considers whether the claims recite an "'inventive concept' . . . 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible abstract idea] itself.'"  *Alice*, 573 U.S. at 217-18 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.*, 566 U.S. 66, 73 (2012)) ("*Alice* Step Two").  Claims that "add nothing of substance to the underlying abstract idea," are patent ineligible.  *Alice*, 573 U.S. at 227.  In a computer-implemented invention, the computer must perform more than "well-understood, routine, conventional activities previously known to the industry."  *Id.* at 225 (quoting *Mayo*, 566 U.S. at 73 (internal quotation marks and brackets omitted)).  A claim that "comprises only 'conventional steps, specified at a high level of generality' [is] insufficient to supply an 'inventive concept.'"  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 222).

The "concern that drives [§101 jurisprudence] [i]s one of pre-emption. . . .  Laws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work. . . . [M]onopolization of those tools . . . thwart[s] the primary object of the patent laws."  *Alice*, 573 U.S. at 216 (citing *Mayo*, 566 U.S. at 71 (quotations and citations omitted)).  A patent is impermissibly preemptive if it "tie[s] up too much future use" of the abstract idea.  *Network Apparel*, 154 F. Supp. 3d at 494 (citations omitted).  "Although much of the preemption analysis is subsumed in the two-step *Mayo/Alice* analysis," courts in this District have addressed the question of preemption separately in the context of motions to dismiss under § 101.  *Id.*

## IV.   ARGUMENT

### A.   Claim 1 of the '776 Patent Is Representative.

"[W]hen multiple claims are substantially similar and linked to the same abstract idea, courts can resolve challenges to all claims by analyzing a single, representative claim."

*PerformancePartners, LLC v. FlashParking, Inc.*, No. WA-23-CV-130-KC, 2023 WL 6617395, at *3 (W.D. Tex. Oct. 11, 2023) (quotations omitted) (citing cases) (independent claim representative of all patent's claims for purposes of patent-eligibility analysis); *see also Alice*, 573 U.S. at 224-26 (finding 208 independent and dependent claims to be patent-ineligible based on analysis of one representative claim).  Here, independent claim 1 is representative because all asserted claims are directed to the same core abstract idea.

The chart below shows the limitations of the independent claims (common requirements emphasized **in green bold underline**):

|  | **Claim 1** | **Claim 29** | **Claim 30** |
|---|---|---|---|
| [pre] | A method comprising: | A system for providing information discovery and retrieval, the system comprising:<br><br>a processor module, the processor module configured at least for performing the steps of: | A computer program product comprising one or more non-transitory computer readable media bearing one or more instructions for: |
| [a] | **receiving an information request**; | **receiving an information request** from a consumer device over a communications network; | **receiving an information request**; |
| [b] | **decoding the information request;** | **decoding the information request;** | **decoding the information request;** |
| [c] | **discovering information using the decoded information request;** | **discovering information using the decoded information request;** | **discovering information using the decoded information request;** |
| [d] | **preparing**, using one or more processing devices **instructions for accessing the information, the instructions including:** | **preparing instructions for accessing the information, the instructions including:** | **preparing instructions for accessing the information, the instructions including:** |
| [e] | **one or more** Automatic Speech Recognition **(ASR) grammar codes;** | **one or more** Automatic Speech Recognition **(ASR) grammar codes;** | **one or more ASR grammar codes;** |

| [f] | **one or more short text string matching codes; and** | **one or more short text string matching codes; and** | **one or more short text string matching codes; and** |
|-----|---|---|---|
| [g] | **one or more information formatting codes operative to format a consumer device display; and** | **one or more information formatting codes operative to format a consumer device display; and** | **one or more information formatting codes operative to format a consumer device display; and** |
| [h] | **communicating the prepared instructions**. | **communicating the prepared instructions** to the consumer device, | **communicating the prepared instructions**. |
| [i] | - | wherein the consumer device is configured at least for retrieving the information for presentation using the prepared instructions. | - |

As shown, except for the preambles, the independent claims are substantively identical. Although claim 1 recites a method, claim 29 a system, and claim 30 a "computer program product . . . bearing . . . instructions," each is directed to the same basic process of receiving information, analyzing information, and responding. *See* Dkt. 1-1 at 15:36-50, 18:36-19:3; *infra* § IV.B. Claim 1 is accordingly representative of all independent claims. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (explaining method and system claims that "contain only minor differences in terminology but require performance of the same basic process' . . . should rise or fall together" (quotations omitted)); *see also Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1368 (Fed. Cir. 2017) (affirming district court's finding of representativeness ); *Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 941 (N.D. Cal. 2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020) (relying on *Smart Systems* to find "minor differences" insufficient to overcome representativeness).

Claim 1 is likewise representative of the asserted dependent claims (2-3, 5-10, and 13)—all of which depend from claim 1—because none of the dependent claims adds steps that "facially contain inventive concepts meriting an individualized eligibility analysis." *PerformancePartners*,

2023 WL 6617395, at *4 (citing *Content Extraction and Transmission, LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014)); Dkt. 1-1 at claims 2-3, 5-10, and 13.  Instead, the dependent claims merely add well-known elements to the abstract concepts in claim 1.  Claim 9 merely adds to the abstract concept of (1) receiving information a requirement that the received information request "include[s] at least an audio portion during which the speaker is silent … representing a background noise portion."  Dkt. 1-1 at claim 9.  Claims 2, 7, 8, 10, and 13 add to the abstract concept of  (2) analyzing information.  For example, claim 2 requires "discovering information" (*i.e.*, analyzing) using "a database . . . containing references to information available from a third party source."  Claims 7, 8, 10, and 13 merely add specific, known techniques for "decoding," such as "isolating an utterance from background noise."  *Id.* at claim 7.  And claims 3 and 5 add elements to the abstract concept of (3) responding.  Claim 3 does so by requiring "preparing instructions for accessing the reference information from the third party source" described in claim 2.  *Id.* at claim 3.  Claim 5 does so by "communicating" (*i.e.*, responding) prepared instructions "to a consumer device different from a requesting consumer device."  *Id.* at claim 5.  Such generic elements—*e.g.*, databases of third-party information or the use of multiple devices—do not satisfy *Alice* Step 2.  Indeed, the specification does not identify these—or any limitation in the asserted dependent claims—as inventive.  Instead, the dependent claims "only layer features onto the methods described in the independent claim[]," such that claim 1 can appropriately be considered as representative of all.  *See PerformancePartners*, 2023 WL 6617395, at *4 (finding single independent claim representative of two independent claims and seventeen dependent claims); *see also Content Extraction,* 776 F.3d at 1348-49 (finding two independent claims representative of 242 claims across four asserted patents where "additional

steps" recited in dependent claims "recite[d] well-known, routine, and conventional functions of scanners and computers").

Accordingly, because all asserted claims "require performance of the same basic process," the Court need only analyze claim 1 to conclude whether they "should rise or fall together." *Accenture Glob. Servs.,* 728 F.3d at 1344 (affirming summary judgment of invalidity for patent ineligibility).  For the reasons discussed herein, all must fall.

**B.     *Alice* Step One: The '776 Patent Claims Are Directed to the Abstract Idea of Receiving, Analyzing, and Communicating Information.**

Representative claim 1 boils down to nothing more than three basic and abstract concepts to achieve the desired result of locating something (in some embodiments, a piece of media) in response to a request: (1) receiving information (*i.e.*, "an information request"); (2) analyzing the information (*i.e.*, "decoding the information request" and "discovering information" from the decoded request); and (3) responding (*i.e.*, "preparing . . . instructions" for accessing the discovered information and "communicating the prepared instructions").  Dkt 1-1 at 15:37-50.  These basic concepts are not inventive.  *See, e.g.*, *Elec. Power*, 830 F.3d at 1354 (explaining that "a process of gathering and analyzing information of a specified content, then displaying the results" is "directed to an abstract idea"); *In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022), *cert. denied sub nom. Killian v. Vidal*, 144 S. Ct. 100, 217 L. Ed. 2d 26 (2023), *reh'g denied*, 144 S. Ct. 441, 217 L. Ed. 2d 245 (2023) (holding that claims "directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating in its normal, expected manner" must fail the *Alice* Step One inquiry).  To the contrary, such basic steps "can be performed by a human, using observation, evaluation, judgment, [and] opinion, because they involve making determinations and identifications, which are mental tasks humans routinely do."  *Id.*, 45 F.4th at 1379 (quotations omitted).  Moreover, these concepts

9

are not "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). Rather, challenges for accessing information—and solutions to those challenges—have existed since the inception of recorded thought. As one example, the Dewey Decimal System for cataloging documents, first published in 1876 and used in libraries around the world, illustrates the same basic premise claimed by the '776 patent. First, a patron submits a request for the book assigned with the code 813.54. The librarian receives this request and uses the Dewey Decimal System to decode it. After decoding the request, the librarian discovers that the information sought is the novel *Beloved* by Toni Morrison. The librarian then prepares and provides instructions to the patron on where and how to obtain the novel.

The Federal Circuit has repeatedly found claims directed towards similar ideas as those at issue here to be abstract. In *Electric Power Group, LLC v. Alstom S.A.*, for example, the Federal Circuit found claims for "systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results" were directed the abstract concept of "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Elec. Power*, 830 F.3d at 1351, 1353-5. The court rejected the argument that the asserted claims were sufficiently non-abstract to survive section 101, finding that the power grid monitoring patents did not represent "an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power*, 830 F.3d at 1354. Similarly, in *AI Visualize, Inc. v. Nuance Communications, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024), the Federal Circuit recently affirmed that claims directed to "using computers to collect, manipulate, and display the data" are abstract under *Alice* Step One "particularly when claimed at a high level of generality," as they are in the

'776 patent.  97 F.4th at 1378; *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ("We have explained that claims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea." (quoting *Elec. Power*, 830 F.3d at 1353); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (method claims "describ[ing] a process of organizing information through mathematical correlations . . . not tied to a specific structure or machine" are abstract); *Content Extraction*, 776 F.3d at 1347 (claims for "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" are directed to an abstract idea); *In re Rosenberg*, 813 F. App'x 594, 596 (Fed. Cir. 2020) ("In past cases, we have held claims focused on collecting and analyzing certain information and then reporting the results of that analysis are directed to an abstract idea.").

As illustrated below, the '766 patent claims recite substantially the same subject matter as claims at issue in *Electric Power*.  In fact, as the chart below demonstrates, claim 1 contains **even less** specificity and detail than the claims invalidated in *Electric Power*.

| Abstract Concept | '766 Claim 1 Elements | *Electric Power* Claim Elements As Analyzed by Federal Circuit[1] |
|---|---|---|
| **Receiving Information** | "receiving an information request" | "receiving a plurality of data streams, each of the data streams comprising sub-second, time stamped synchronized phasor measurements wherein the measurements in each stream are collected in real time at geographically distinct points over the wide area of the interconnected electric power grid, the wide area comprising at least two elements from among control areas, transmission companies, utilities, regional reliability coordinators, and reliability jurisdictions; receiving data from other power system data sources, the other power system data |

_____

[1] *Elec. Power*, 830 F.3d at 1351-52.

| Abstract Concept | '766 Claim 1 Elements | *Electric Power* Claim Elements As Analyzed by Federal Circuit[1] |
|---|---|---|
| | | sources comprising at least one of transmission maps, power plant locations, EMS/SCADA systems; receiving data from a plurality of non-grid data sources" |
| **Analyzing Information** | "decoding the information request; "discovering information using the decoded information request" | "detecting and analyzing events in real-time from the plurality of data streams from the wide area based on at least one of limits, sensitivities and rates of change for one or more measurements from the data streams and dynamic stability metrics derived from analysis of the measurements from the data streams including at least one of frequency instability, voltages, power flows, phase angles, damping, and oscillation modes, derived from the phasor measurements and the other power system data sources in which the metrics are indicative of events, grid stress, and/or grid instability, over the wide area" |
| **Communicating or Displaying Results** | "preparing, using one or more processing devices instructions for accessing the information, the instructions including: one or more Automatic Speech Recognition (ASR) grammar codes; one or more short text string matching codes; and one or more information formatting codes operative to format a consumer device display; and communicating the prepared instructions." | "displaying the event analysis results and diagnoses of events and associated ones of the metrics from different categories of data and the derived metrics in visuals, tables, charts, or combinations thereof, the data comprising at least one of monitoring data, tracking data, historical data, prediction data, and summary data; displaying concurrent visualization of measurements from the data streams and the dynamic stability metrics directed to the wide area of the interconnected electric power grid; accumulating and updating the measurements from the data streams and the dynamic stability metrics, grid data, and non-grid data in real time as to wide area and local area portions of the interconnected electric power grid; deriving a composite indicator of reliability that is an indicator of power grid |

12

| Abstract Concept | '766 Claim 1 Elements | *Electric Power* Claim Elements As Analyzed by Federal Circuit[1] |
|---|---|---|
| | | vulnerability and is derived from a combination of one or more real time measurements or computations of measurements from the data streams and the dynamic stability metrics covering the wide area as well as non-power grid data received from the non-grid data source." |

Given the close parallels between the '766 patent claims and those held to be abstract and patent ineligible in *Electric Power* and the other cases cited above, Federal Circuit case law compels the conclusion that the claims of the '766 patent are directed to a patent-ineligible abstract idea.

**C.    *Alice* Step Two: The '776 Patent Does Not Contain An Inventive Concept.**

At *Alice* Step Two, the claims of the '766 patent do not, alone or in combination, supply an inventive concept.  The specification asserts that the claimed invention provides improved "systems and methods for providing information discovery and retrieval," including through automatic speech recognition, or "ASR," to identify a particular media request from many potential options.  Dkt. 1-1 at 1:50-52 (explaining the patent addresses the "present problem[] for a media consumer to locate and acquire desired media when there is uncertainty over the precise identity of the media").  But, as the Federal Circuit explained in *Electric Power*, "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from §101 undergirds the information-based category of abstract ideas."  *Elec. Power*, 830 F.3d at 1355.  The '766 patent falls squarely within the "information-based category of abstract ideas" held ineligible by the Federal Circuit, and further lacks a redeeming inventive concept.  *Id.*

***First***, the '766 patent "do[es] not even require a new source or type of information, or new techniques for analyzing it." *Elec. Power*, 830 F.3d at 1355. Here, the patent specification is "replete with references to implementing the claims using conventional technology." *IPA Techs., Inc. v. Amazon.com, Inc.*, 307 F. Supp. 3d 356, 370 (D. Del. 2018). For example, the specification describes numerous "industry standard" or "commercial" sources of information used to, *e.g.*, "decod[e] the information request" as required by claim 1. *See, e.g.*, Dkt. 1-1 at 3:33-34 (describing Figure 12 as "a visual depiction of ***industry standard metadata***"); 4:16-24 (explaining that "Context Free Grammar Automated Speech Recognition (CFG ASR)" and "Statistical Language Model Automated Speech Recognition (SLM ASR) are both "***industry term[s]***"); 6:10-15 ("The data mining and metadata processor 110 also receives metadata updates from a multiplicity of ***commercial and public sources known in the art***."); 10:66-11:2 ("The access instructions 954 include instructions for retrieving media content . . . from media sources 975, which include . . . ***commercial sources*** 116 or 976."); 11:41-44 ("The decoded media request is fulfilled by accessing ***consumer and commercial media reference databases*** 1160 and 1162[.]"); 14:18-20 ("In yet another embodiment, the system employs a plurality of ***industry standard*** or proprietary speech recognition systems.") (emphases added); *see also AI Visualize*, 97 F.4th at 1380 ("[A] patentee that emphasizes a claim's use of certain technology, for example, a general-purpose computer, fails at step two when the intrinsic record establishes that the technology is conventional or well-known in the art."). The '766 patent further generically states that "[a]ny of the methods" it discloses can be implemented "using a software application," and "[a]ny of the software applications disclosed" can operate on "one or more computing devices." Dkt. 1-1 at 4:37-44. The '766 patent "specification's recitation of conventional technology to implement the

invention, combined with broad, functional claim language that merely describes an abstract idea"
is a clear indication that the patent lacks an inventive concept. *IPA Techs.*, 307 F. Supp. 3d at 370.

**Second**, the asserted claims as a whole "do not require an arguably inventive set of
components or methods" or "invoke any assertedly inventive programming." *Elec. Power*, 830
F.3d at 1355. As explained above, *supra* § IV.B, representative claim 1 describes a method for
receiving information, analyzing information (by "decoding" the request and discovering
information using the decoded request), and responding (by "preparing . . . instructions for
accessing the information and "communicating" those instructions). Dkt. 1-1 at 15:36-50. At the
responding step, claim 1 states that instructions are prepared using the combination of three codes:
"one or more Automatic Speech Recognition (ASR) grammar codes;" "one or more short text
string matching codes;" and "one or more information formatting codes[.]" *Id.* But this recitation
of codes, without more, fails to provide any meaningful limitation beyond the abstract idea itself
and amounts to nothing more than using known, generic concepts to generate additional
information. *See Digitech Image Techs.*, 758 F.3d at 1351 (finding patent ineligible "a process
that employs mathematical algorithms to manipulate existing information to generate additional
information"). The other asserted claims similarly recite conventional, generic, and routine
elements. *See* Dkt. 1-1 at 15:51-56 (dependent claim 2 requiring "accessing a database" to
discover information); 15:57-61 (dependent claim 3 requiring "one or more processing devices");
16:5-7 (dependent claim 5 requiring "a consumer device different from a requesting consumer
device"); 16:10-12 (dependent claim 7 requiring "isolating an utterance from background noise");
18:36-56 (independent claim 29 requiring "a processor module" configured to, *inter alia*,
"receiv[e] an information request from a consumer device over a communications network");
18:57-19:3 (independent claim 30 requiring "[a] computer program product comprising one or

15

more non-transitory computer readable media").  There is nothing inventive about accessing "databases" or using "processing devices," "consumer devices," "processor modules," "communications networks," "computer program products" or "non-transitory computer readable media" to "provide information discovery and retrieval."  *Id.* at Abstract; *see also, e.g.*, *Elec. Power*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").

**D.    The '766 Patent Preempts the Practical and Common-Sense Means for Responding to a Request for Information.**

The purported "solution" provided by the '766 patent is impermissibly broad and abstract, underscoring that the patent should be found ineligible under § 101.  Wyoming presents the '766 patent as an alleged improvement in "systems and methods for providing speech based media retrieval" to address the "problem[] for a media consumer to locate and acquire desired media when there is uncertainty over the precise identity of the media."  Dkt. 1-1 at 1:50-53; 2:22-25.  But "there is a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general."  *Elec. Power*, 830 F.3d at 1356 (quotations omitted).  Like in *Electric Power*, the Asserted Claims do the latter.  Notably, representative claim 1 is ***not*** limited to "speech based" media retrieval, and more broadly claims a method for "receiving an information request."  *Id.* at 15:37-50.  Rather than claiming a specific way of enabling a computer to retrieve media, the patent "purport[s] to monopolize every potential solution to the problem" through claims to the abstract idea of "receiving" and "decoding" an "information request," "preparing . . . instructions" for accessing the information, and then "communicating the prepared instructions."  Dkt. 1-1 at 15:37-50.  Patent claims cannot permissibly "prevent the use of [such] basic building blocks of technology."  *Ariosa Diagnostics,*

*Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).  Doing so would "inhibit[] innovation by prohibiting other inventors from developing their own solutions to the problem without first licensing the abstract idea."  *Elec. Power*, 830 F.3d at 1356 (quotations omitted).  Thus, the '766 patent claims are impermissibly preemptive, which mandates a finding that the claims are directed to a patent-ineligible abstract concept.

## V.    CONCLUSION

For the reasons stated above, Apple respectfully requests that this case be dismissed in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

DATED: June 10, 2024

Respectfully submitted,

By: */s/ Steven J. Wingard*

Steven J. Wingard
State Bar No. 00788694
Stephen L. Burbank
State Bar No. 24109672
Robert P. Earle
State Bar No. 241245566
swingard@scottdoug.com
sburbank@scottdoug.com
rearle@scottdoug.com
SCOTT DOUGLASS &
    MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Fax: (512) 495-6399

Sarah R. Frazier (*pro hac vice pending*)
**(LEAD COUNSEL)**
Nina Garcia (*pro hac vice pending*)
Alicia M. Coneys (*pro hac vice pending*)
Phuc Do (*pro hac vice pending*)
sarah.frazier@wilmerhale.com
nina.garcia@wilmerhale.com
alicia.coneys@wilmerhale.com
phuc.do@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Mark D. Selwyn (*pro hac vice pending*)
Joseph F. Haag (*pro hac vice pending*)
mark.selwyn@wilmerhale.com
joseph.haag@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically and served on all counsel of record by the Court's CM/ECF system on June 10, 2024.

By: */s/ Steven J. Wingard*
Steven J. Wingard